UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS WILLIAMS,

    Petitioner,

                                              CASE NO. 12-13663
v.                                         HONORABLE GEORGE CARAM STEEH

ASSISTANT WARDEN SHANE PLACE,

    Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Douglas Williams has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The pleading challenges petitioner's plea-based conviction for murder in the second degree, Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. Petitioner alleges that his guilty plea was involuntary because his trial attorney frightened him into pleading guilty. Respondent Shane Place urges the Court through counsel to deny the petition on the ground that the state court's determination that petitioner's plea was voluntary and intelligent was not contrary to, or an unreasonable application of, federal law. The Court agrees. The habeas petition therefore is DENIED.

### I. BACKGROUND

Petitioner was charged in Wayne County, Michigan with first-degree (premeditated) murder, assault with intent to commit murder, and felony firearm. On

December 11, 2006, he pleaded guilty in Wayne County Circuit Court to second-degree murder, Mich. Comp. Laws § 750.317, and felony firearm, Mich. Comp. Laws § 750.227b.  Petitioner admitted at his plea that he shot and killed a person at Russell and Garfield Streets in Detroit on May 13, 2006.

In return for petitioner's plea, the prosecutor dismissed the counts charging petitioner with first-degree murder and assault with intent to commit murder. Additionally, the parties agreed that petitioner's sentence would be two years for the felony firearm conviction and a consecutive term of twenty-three to forty years in prison for the murder conviction.

At the sentencing on January 9, 2007, petitioner made an oral motion to withdraw his guilty plea.  He claimed that his attorney had frightened him into pleading guilty by stating that witnesses to the crime were going to get on the witness stand and "cook" him.  The trial court denied petitioner's motion and sentenced petitioner pursuant to the plea agreement to two years in prison for the felony firearm conviction and to a consecutive term of twenty-three to forty years in prison for the murder conviction with credit for 185 days.

Petitioner subsequently filed a written motion to withdraw his guilty plea.  The trial court held an evidentiary hearing on the motion and then granted the motion on the basis that trial counsel had not discussed with petitioner the elements of second-degree murder or the fact that petitioner would have been entitled to a jury instruction on second-degree murder if he gone to trial.

The prosecutor appealed, and on October 29, 2007, the Michigan Court of Appeals reversed the trial court's decision and remanded the case to the trial court for

further proceedings. The Court of Appeals stated that, because Petitioner maintained he was not involved in the crime, intent was not an issue in the case and the failure to inform petitioner that the jury would be instructed on second-degree murder was not a sufficient basis for allowing petitioner to withdraw his guilty plea. The Court of Appeals also rejected the trial court's ruling that a guilty plea should be withdrawn where the defendant was not advised of the elements of the offenses. See People v. Williams, No. 280583 (Mich. Ct. App. Oct. 29, 2007). Petitioner appealed to the Michigan Supreme Court, but the state supreme court denied leave to appeal because it was not persuaded to review the issue. See People v. Williams, 480 Mich. 1136; 745 N.W.2d 797 (2008) (table).

On remand, the trial court granted petitioner's motion to withdraw his guilty plea on alternative grounds. The court stated that, but for the ongoing dialogue between petitioner and his relatives, which was prompted by petitioner's trial attorney, petitioner would not have given the responses that he gave at the plea proceeding. The court concluded that the plea was not voluntary.

The prosecutor appealed a second time, and, on November 21, 2008, the Michigan Court of Appeals vacated the trial court's decision to grant petitioner's motion to withdraw his guilty plea. The Court of Appeals stated that the trial court did not have jurisdiction to hear petitioner's second motion to withdraw his guilty plea, because, "once a defendant has filed a motion to withdraw a guilty plea after sentence, 'defendant may seek relief only in accordance with the procedure set forth in subchapter 6.500' " of the Michigan Court Rules. See People v. Williams, No. 286733 (Mich. Ct. App. Nov. 21, 2008). Petitioner appealed the Court of Appeals decision, but, on September 11, 2009,

the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. See People v. Williams, 485 Mich. 861; 771 N.W.2d 778 (2009) (table).

Petitioner subsequently filed a motion for relief from judgment, alleging that he had a due process right to withdraw his guilty plea because defense counsel frightened him into pleading guilty. The trial court denied the motion after concluding that petitioner had failed to establish that his plea was involuntary to a degree that it would be manifestly unjust to allow his conviction to stand. Petitioner moved for reconsideration, but the trial court denied his motion. The Michigan Court of Appeals denied petitioner's subsequent application for leave to appeal on the basis that petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). See People v. Williams, No. 303334 (Mich. Ct. App. Oct. 6, 2011). On June 25, 2012, the Michigan Supreme Court denied leave to appeal for the same reason. See People v. Williams, 491 Mich. 941; 815 N.W.2d 483 (2012) (table).

On August 17, 2012, petitioner filed his habeas corpus petition. His sole claim reads:

> Due process entitled petitioner to withdraw his guilty plea where defense counsel frightened petitioner into pleading guilty, and petitioner attempted to withdraw his plea before sentencing.

Pet. at 4. Respondent urges the Court to deny the habeas petition on the ground that the state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

## II. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." Harrington v. Richter, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

>  (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)." Renico v. Lett, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

### III.  DISCUSSION

Petitioner claims that his guilty plea was coerced because his trial attorney informed him that two witnesses would "cook" him if he went to trial and that he would die in prison if he were convicted of first-degree murder. Petitioner claims that he was scared at the time and influenced by the advice offered by an aunt and cousin who accompanied his attorney to the lockup on the day of trial. According to petitioner, these "extraordinary circumstances" rendered his plea involuntary, and he is entitled to withdraw his plea.

**A. Clearly Established Federal Law**

A defendant has no constitutional right to withdraw a knowing and voluntary guilty plea. Freeman v. Muncy, 748 F. Supp. 423, 429 (E.D. Va. 1990) (citing Siers v. Ryan, 773 F. 2d 37 (3d Cir. 1985)); Williams v. Smith, 454 F. Supp. 692, 696 (W.D. N.Y. 1978) (citing U.S. ex rel. Rivera v. Follette, 395 F.2d 450 (2d Cir. 1968)). But because a guilty plea involves a waiver of constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970); see also

Fautenberry v. Mitchell, 515 F.3d 614, 636-37 (6th Cir. 2008) (citing Brady v. United States, 397 U.S. at 748, and Boykin v. Alabama, 395 U.S. 238, 243 (1969)).  For a plea to be voluntary and knowing, the defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering.  Ruelas v. Wolfenbarger, 580 F.3d 403, 408 (6th Cir. 2009) (citing Brady v. United States, 397 U.S. at 748-50, and Fautenberry v. Mitchell, 515 F.3d at 636-37).  Courts must look to all the relevant circumstances when determining whether a plea was voluntary.  Brady v. United States, 397 U.S. at 749.

### B.  The State Court's Decision

The state trial court was the last state court to adjudicate petitioner's claim on the merits.  Although the trial court determined on two occasions that petitioner's plea was not knowingly and voluntarily made, the trial court ultimately ruled that petitioner's plea was not involuntary to the degree that it would be manifestly unjust to allow his conviction to stand.  According to the trial court, there was no evidence that petitioner was so fearful that he was unable to weigh the potential consequences of going to trial against the consequences of pleading guilty. The record, as summarized below, supports the trial court's conclusion that petitioner's plea was voluntary.

### C.  The Facts as Set Forth at the Plea Proceeding, Sentencing, and Evidentiary Hearing

At the plea proceeding on December 11, 2006, petitioner was advised of the plea and sentencing agreement.  He claimed to understand the plea agreement, as well as, the maximum penalty for the crimes for which he was pleading guilty and the rights that he was waiving by pleading guilty.  He assured the trial court that nobody had

threatened him to make him plead guilty, nor promised him anything other than what was stated on the record, and that he was pleading guilty of his own free will. He then informed the trial court that he had shot the victim with a revolver and that the person died as a result of the shooting.

At petitioner's sentencing, he claimed that his attorney had frightened him into pleading guilty by stating that witnesses were going to get on the witness stand and "cook" him. He also claimed that his attorney failed to give him the transcript of his hearing in state district court and that his attorney had told him not to say anything when he appeared in court. Petitioner's attorney, however, denied telling petitioner not to say anything in court, and he maintained that he gave petitioner all the discovery materials.

At the subsequent evidentiary hearing on petitioner's motion to withdraw his guilty plea, petitioner testified that he was twenty-four years old, had an eleventh grade education, could read and write, had no previous criminal convictions, and had not been in the Wayne County Jail before this case arose. He claimed that his trial attorney had told him to plead guilty because two witnesses were going to "cook" him by identifying him at trial, and, if the jury believed the witnesses, he would be convicted of first-degree murder and sentenced to life imprisonment. Petitioner testified that, upon hearing what his attorney said, he was nervous and scared, and on the day set for trial, his aunt had encouraged him to go to trial, but his cousin had recommended that he plead guilty. Petitioner maintained that he did not shoot anyone and that the reason he previously admitted to shooting someone was that he was scared and because his attorney had said he was going to get natural life in prison if he did not plead guilty. He said that he had not been in trouble before this case arose and that he did not know what to say at the time. He admitted, however, that he knew what the sentence would be when he

pleaded guilty and that he chose to plead guilty.

Petitioner's aunt testified at the hearing that she went to see petitioner with his attorney on the day of the plea hearing. When petitioner informed her that he was innocent and that his attorney had not worked for him, she encouraged petitioner to let everyone know that he did not want to do this and did not commit the crime. She claimed at the evidentiary hearing that petitioner had looked scared at the time, but she admitted that she did not say much during her conversation with petitioner in the lockup.

Petitioner's trial attorney testified at the hearing that he had three meetings with petitioner. During the first jailhouse visit, he provided petitioner with discovery materials and talked about the preliminary examination. During the second visit, they talked about possible defenses. Although there was conflicting evidence at the preliminary examination, one person had identified petitioner as the shooter. Petitioner told him about a girlfriend who had picked him up before the shooting occurred. Defense counsel, however, was unable to locate the girlfriend, and petitioner later informed him that he did not know where to find the person.

During the third visit with petitioner, defense counsel discussed going to trial versus taking a plea. By then, the prosecution had offered to let petitioner plead guilty to second-degree murder and felony firearm. Defense counsel talked with petitioner about the penalties that would be imposed if there were a conviction on the first-degree murder charge.

On the day set for trial, defense counsel discussed the prosecutor's plea offer with petitioner and his family and explained what he expected the testimony to be at trial. He then arranged to have two of petitioner's female relatives join the attorney in talking to petitioner in the holding tank at the jail. He had explained to petitioner and his

relatives that petitioner would die in prison if he were convicted as charged or he could have an "outdate" if he pleaded guilty.

Defense counsel claimed at the evidentiary hearing that he had left the decision whether to plead guilty up to petitioner, but he (defense counsel) was under the impression that petitioner's relatives would urge petitioner to consider the plea offer. Defense counsel further testified that, even though petitioner struggled with the decision, at no time did he (defense counsel) or petitioner's relatives say that petitioner had to plead guilty. Defense counsel thought that petitioner ultimately decided to plead guilty to mitigate his sentence.

**D. Analysis**

The record, as summarized in the preceding paragraphs, supports the state trial court's conclusion that petitioner's plea was not coerced. Petitioner claimed at the plea proceeding that he had not been threatened to plead guilty and that he was pleading guilty of his own free will. At the subsequent evidentiary hearing, petitioner admitted that he chose to plead guilty knowing what the sentence would be under the plea and sentencing agreement.

The record indicates that trial counsel left the decision of whether to plead guilty or go to trial to petitioner and his relatives. And, as the state trial court recognized, there is no evidence that petitioner was so fearful that he was unable to weigh the potential consequences of going to trial against the consequences of pleading guilty.

The trial court also reasonably concluded that defense counsel did not attempt to coerce petitioner into pleading guilty by bringing his relatives to see him. No doubt, petitioner was faced with a difficult decision, and if the prosecutor or trial judge had advised petitioner to plead guilty, the advice might have been coercive. But the

encouragement to plead guilty in this case came from petitioner's attorney and a close relative.[1]  Pressure from family to plead guilty

> is probative of an accused's motivation for pleading guilty, [but] it does not necessarily show coercion, duress, or involuntariness.  Criminal prosecutions are stressful experiences for nearly all concerned — particularly defendants and their families.  It is to be expected that feelings will run strong within a family unit and that loved ones will advise, counsel, implore, beseech, and exhort defendants to take — or abjure — myriad courses of action.  The relevant question for plea withdrawal is not whether the accused was sensitive to external considerations — many defendants are — but instead whether the decision to plead was voluntary, i.e., a product of free will.

United States v. Pellerito, 878 F.2d 1535, 1541 (1st Cir. 1989).

Petitioner's decision to plead guilty appears to have been a rational choice made with full knowledge of the evidence against him and the possibility that he would face life imprisonment without the possibility of parole if he were found guilty of first-degree murder following a trial.  Given the realities of the situation, including the likelihood of an unsuccessful defense, the encouragement to plead guilty was sound advice.  United States ex rel. Brown v. LaVallee, 424 F.2d 459, 461 (2d Cir. 1970).

The fact that petitioner may have pleaded guilty to mitigate his sentence is not a basis for finding that his plea was involuntary.  As the Supreme Court explained in North Carolina v. Alford, 400 U.S. 25 (1970), "[t]hat he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." Id. at 31; see also Brady v. United States, 397 U.S. at 751 (stating that a guilty plea is not "compelled and invalid under the Fifth

---

[1] The other relative recommended going to trial.

Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged").

## IV.  CONCLUSION

Having considered all the relevant circumstances, the Court concludes that the state trial court's determination – that petitioner's guilty plea was voluntary – was objectively reasonable.  The decision was not contrary to, or an unreasonable application of, Supreme Court precedent or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus is denied.

## V.  CERTIFICATE OF APPEALABILITY

Before petitioner may appeal this decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. at 484.

Reasonable jurists would not find the Court's assessment of petitioner's claim debatable or wrong, because the record supports the state court's determination that petitioner's plea was voluntary. The Court therefore declines to issue a certificate of appealability. However, if petitioner chooses to appeal this Court's decision, he may proceed in forma pauperis on appeal because he was granted leave to proceed in forma pauperis in this Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

Dated: November 5, 2013

        s/George Caram Steeh
        GEORGE CARAM STEEH
        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 5, 2013, by electronic and/or ordinary mail and also Douglas Williams #631187, Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811.

s/Barbara Radke
Deputy Clerk